IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PEYTON PRATT | )<br>)<br>) |
| PLAINTIFF, | )<br>) Case No. _____ |
| V. | )<br>) |
| THE METROPOLITAN GOVERNMENT<br>OF NASHVILLE AND DAVIDSON<br>COUNTY | ) CLASS ACTION<br>)<br>)<br>) |
| | )<br>) |
| DEFENDANT. | ) |

## CLASS-ACTION COMPLAINT

## INTRODUCTION

1. Housing affordability is an issue in Nashville, and laws that make it harder for people to build make the problem worse. Last year, the Metropolitan Government of Nashville and Davidson County ("Metro") established a stormwater capacity fee, which it began charging on January 1, 2024, to fund improvements to its stormwater system. But rather than distributing the costs of the improvements evenly among all residents who ostensibly benefit from the stormwater system, Metro's stormwater capacity fee places those costs squarely on people who are seeking a permit to build.

2. The Fifth Amendment to the United States Constitution prevents government "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). The permitting process isn't

1

exempt from that constitutional command. As the Supreme Court made clear, a law that forces landowners to give the government a disproportionate amount of money in exchange for a building permit resembles "an out-and-out plan of extortion." *Nollan v. Cal. Coastal Com*, 483 U.S. 825, 837 (1987) (citations omitted). As the United States Court of Appeals for the Sixth Circuit explained last year in a case involving Metro's now-defunct sidewalk law, this threat of extortion looms "no matter the branch of government responsible for the [permit] condition." *Knight v. Metro. Gov't of Nashville and Davidson Cnty.*, 67 F.4th 816, 835 (6th Cir. 2023).

3. Here, Metro forced Plaintiff Peyton Pratt to pay a stormwater capacity fee of over $6,000 simply for the "privilege" of building a larger house on his property to accommodate his growing family. Metro did so without making any individualized determination regarding the actual impact (if any) of Mr. Pratt's development on Metro's stormwater system. Perhaps worse, Metro's stormwater capacity fee charges individuals a per-square-foot fee not just for impervious area that they're adding, but also for impervious area that has existed all along. Thus, even though Mr. Pratt sought to add less than 2,500 square feet in impervious area, Metro charged him a stormwater capacity fee for over 8,000 square feet. Mr. Pratt isn't the only Nashvillian affected by the stormwater capacity fee. He brings this class-action lawsuit not just to vindicate his own rights, but also the rights of other Nashvillians that have been coerced into relinquishing their hard-earned money in exchange for a permit to build.

## JURISDICTION AND VENUE

4. Plaintiff brings this civil rights lawsuit pursuant to 42 U.S.C. § 1983 for the violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution.

5. This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 (federal question) and § 1343(a)(3) (redress for deprivation of civil rights).

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in this District and because the acts and events giving rise to the Complaint occurred or will occur in this District.

7. This Court has authority to enter a declaratory judgment and to provide permanent injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

## PARTIES

8. Plaintiff Peyton Pratt is a Nashville homeowner and resident. Born and raised in Nashville, Mr. Pratt moved back to Nashville in 2016 and moved to his current property in 2019. The Pratts wanted a larger house to accommodate their family of five and decided that the most cost-effective way to have a larger home was to expand their current home, rather than to buy a new home. Mr. Pratt and his wife intend for their home to be their "forever home" to ensure that their children can grow up in Nashville and be active members of the Nashville community. As a condition to build his property, Mr. Pratt was required to pay a stormwater capacity fee of over $6,000. Mr. Pratt paid the fee under protest so he could continue building his new home.

9. Defendant the Metropolitan Government of Nashville and Davidson County ("Metro") is a political subdivision of the State of Tennessee and a public corporation capable of suing and being sued. *See* Metro. Charter § 1.01. Metro is a person within the meaning of 42 U.S.C. § 1983. At all relevant times, Metro has acted and continues to act under color of law.

# FACTUAL ALLEGATIONS

**Metro's Stormwater Management**

10. Metro has created a stormwater division within the Department of Water and Sewerage Services. Metro. Code § 15.64.015. The stormwater division is primarily responsible for:

> [D]eveloping stormwater management plans; identifying capital requirements and developing necessary financing for maintenance and rehabilitation of existing and new stormwater facilities; collecting fees and charges for the division; educating the public on the importance of stormwater management and pollution control; developing written regulations and technical guidelines as may be necessary to enforce the terms of this chapter.

*Id.* The stormwater division is also responsible for "plan approval and construction inspection of both private stormwater facilities and public stormwater facilities." *Id.*

11. "Stormwater" means "stormwater run-off, snow melt run-off, surface run-off, street wash waters related to street cleaning and maintenance, infiltration other than infiltration contaminated by seepage from sanitary sewers or other discharges and drainage." Metro. Code § 15.64.010.

12. Metro has established "a storm water utility and a system of storm water user fees for each parcel of property in Davidson County." Metro. Code § 15.64.032(A).

13. The fee is used by Metro "exclusively for operation and management of the storm water utility and such as storm water and flood control." *Id.*

14. The fees charged are reviewed at least every five years based on the square footage of the impervious area of each property. Metro. Code § 15.64.032(I).

15. "Impervious area" means "the portion of a parcel of property that is covered by any material, including without limitation roofs, streets, sidewalks and parking lots paved with asphalt, concrete, compacted sand, compacted gravel or clay, that substantially reduces or prevents the infiltration of

4

storm water." Metro. Code § 15.64.010. Impervious area does not include natural undisturbed surface rock.

16. The amount of fees charged distinguishes between residential and non-residential properties, but all properties are charged a monthly fee based on the total square feet of impervious area. *See* Table § 15.64.032 (Graduated Storm Water User Fee Schedule).

17. Metro also requires an array of permits and conditions related to stormwater and property development. *See, e.g.*, Metro. Code § 15.64.110 (building and occupancy permits); Metro. Code § 15.64.131 (Infill permits); Stormwater Management Manual Volume 1-Regulations, Appendix F (requiring an easement to Metro or a Declaration of Restrictions and Covenants regarding stormwater inspections and maintenance).

18. In addition, Metro generally requires development projects that add impervious area to a property to develop plans that treat and mitigate stormwater. *See* Metro. Code § 15.64.131 (Infill development—Applicability and requirements).

19. For individual residential development and redevelopment including additions made to existing homes that are greater than 800 square feet, a Stormwater Single Family infill permit ("SWSF permit") is required. *See* Metro. Code § 15.64.131; Stormwater Management Manual, Volume 1-Regulations at Chapter 8 Regulated Residential Infill; Metro Water Services Infill Development Guide at p. 1–2.

20. The Department also issues and develops "a schedule of charges for services provided in reviewing permit applications, processing appeal and variance requests to the stormwater management commission, or reviewing plans submitted by private entities for proposed projects that must comply with the metropolitan government's stormwater management regulations."

5

Metro. Code § 15.64.215; *see also* Metro Water Services Development Fee Schedule attached as Ex. 1.

**Metro's Stormwater Capacity Fee**

21. On March 7, 2023, the Metropolitan Council passed Ordinance No. BL2023-1690 ("the Ordinance"), which established a stormwater capacity fee for Davidson County. *See* Ordinance No. BL2023-1690 attached as Ex. 2 (codified at Metro. Code § 15.64.035).

22. The capacity fee took effect on January 1, 2024. *See* Resolution RS2023-2388.

23. The Ordinance establishes a capacity fee for projects "resulting in Post Development Impervious Surface Project Area exceeding 800 square feet." Metro. Code § 15.64.035(B).

24. The capacity fee applies to "properties in Davidson County that (1) receive storm water service fully or partly through a combined sewer system or (2) are infill lots located in previously developed parts of the MS4 area that receive storm water service fully or partly through another closed-pipe network maintained by the metropolitan government." *Id*. § 15.64.035(G).

25. "Impervious area" means "the portion of a parcel of property that is covered by any material, including without limitation roofs, streets, sidewalks and parking lots paved with asphalt, concrete, compacted sand, compacted gravel or clay, that substantially reduces or prevents the infiltration of storm water. Impervious area shall not include natural undisturbed surface rock." *Id*. § 15.64.035(A).

26. "Impervious surface" is defined as a term that applies "to any ground or structural surface that water cannot penetrate or through which water penetrates with great difficulty, including but not limited to paved concrete or asphalt areas, graveled areas with limited infiltration, and roofs." *Id*.

27. "Post development impervious surface project area" means "all impervious surface within the project area." *Id.*

28. A "project" is defined as "a project for which a development permit is required by the Metropolitan Code of Laws." *Id.*

29. The stormwater capacity fee is "seventy-one cents for each square foot of post development impervious surface project area." *Id.* § 15.64.035(B).

30. As defined, the stormwater capacity fee is based on the total (rather than net) post-impervious surface area. This means that property owners making modest improvements on their property are also charged for the preexisting impervious area on the property as long as the development results in 800 square feet or more of impervious area.

31. Under the Ordinance, a stormwater capacity fee is now required for any project that requires a development permit and results in 800 square feet or more of impervious area. Ordinance No. BL2023-1690 (Analysis).

32. Impervious areas that are or are intended to be transferred to the public, such as rights-of-way, are not exempt from the stormwater capacity fee calculation. Metro. Code § 15.64.035(E).

33. The stormwater capacity fee must be paid in full before any development permit is issued to develop property. *Id.* at § 15.64.035(B).

34. Property owners or developers must also file a Request for Stormwater Availability form for projects that are subject to the capacity fee and stormwater permits. *See* Request for Stormwater Availability form, attached as Ex. 3.

35. The Water and Sewer Availability Study Fee and the capacity fee of $0.71 per square foot of the total post-impervious surface area must be paid before any permit approval. *See* Ex. 3.

36. The capacity fee is distinct from the stormwater user fee, *see* Metro. Code § 15.64.032, and is collected in addition to the stormwater user fees. Metro. Code § 15.64.035(B).

37. The capacity fee is thus a land-use permit condition and not a user fee or tax. The capacity fee targets development and is a demand for money from a land-use permit applicant.

38. As Jim Snyder with Metro Water explained in response to a Metro Council member asking how much the capacity fee will cost each user every month, the capacity fee is not paid by stormwater users or the public at large but is "driven by development." Metro Council Committee: Budget & Finance Committee (Dec. 18, 2023) at 23:45–24:44.[1]

39. The funds generated from the capacity fee are "used to fund capital improvements in the separate stormwater collection system and stormwater-related capital improvements in the combined sewer system." Metro. Code § 15.64.035(B).

40. The capacity fee is non-refundable and non-transferable. *Id*. § 15.64.035(F).

41. The Ordinance does not provide for waivers or variances to avoid paying the stormwater capacity fee unless the residential project is restricted for affordable housing. *Id*. § 15.64.035(H).

42. There is no appeal process to challenge payment of the capacity fee. The only appeal available is "limited to a review of the determination of the square footage of the post development impervious surface project area used for the stormwater capacity fee calculation." *Id*. § 15.64.035(I).

**Mr. Pratt's Home Renovation and Forced Payment of the Stormwater Capacity Fee**

43. Mr. Pratt has lived in Nashville since 2016. He has lived in a house on his current property since 2019.

---

[1] https://www.youtube.com/live/ujSj2_TU3Cc?t=1425s (last visited December 18, 2024).

44. As his children grew older, Mr. Pratt and his wife wanted more room for their family of five and discovered that the most cost-effective solution was to expand the house on their current property rather than purchase a new house.

45. Mr. Pratt is not a developer and has no intention of selling the house after the additions are made. His home is intended to be his family's "forever home" so his children can grow up in Nashville and be active members of the Nashville community.

46. The pre-development impervious area of his property was 6,047 square feet.

47. Mr. Pratt's construction plan to make additions to his home added 2,419 square feet of impervious area. The total post-development impervious surface area is 8,466 square feet.

48. Because Mr. Pratt's development added more than 800 square feet of impervious area, he was required to obtain a Stormwater Single Family infill permit ("SWSF permit"). *See* Metro. Code § 15.64.131; Stormwater Management Manual, Volume 1-Regulations at Chapter 8 Regulated Residential Infill; Metro Water Services Infill Development Guide at p. 1–2.

49. With an additional 2,419 square feet of net added impervious area, Mr. Pratt's development is a Tier I project creating between 800 square feet and 2,500 square feet of net impervious area. Metro. Code § 15.64.131(B)(1).[2]

50. The fee to apply for an SWSF permit is a $450 filing fee plus an additional technical fee of $45.00. *See* Metro Water Services Development Fee Schedule, Ex.1.

---

[2] Generally residential infill projects creating between 800 square feet and 2,500 square feet of additional net impervious area are subject to infill regulations. However, Mr. Pratt's development is exempt from Metro's infill regulations due to the total lot impervious area on his property not exceeding 30% of total site area. Metro. Code § 15.64.131.

9

Case 3:24-cv-01508    Document 1    Filed 12/30/24    Page 9 of 18 PageID #: 9

51. As a condition to obtain the SWFS permit and build on his property, Mr. Pratt was also required to submit a Request for Stormwater Availability and pay the stormwater capacity fee of 0.71 cents per square foot of the total post-impervious surface area.

52. On August 7, 2024, Infinium Builders LLC, on behalf of Mr. Pratt as his contractor, submitted an SWFS permit application and paid the $495 SWFS permit fee.

53. The same day on August 7, 2024, Mr. Pratt's contractor also submitted the Request for Stormwater Availability Form stating that the total post-impervious surface area is 8,466 square feet and that the net gain of impervious area is 2,419 square feet.

54. Under the Ordinance, Mr. Pratt was charged not only for the net-impervious area of the project but for the total post-impervious surface area of his property.

55. The total capacity fee for Mr. Pratt's addition to his house was $6,010.86 (8,466 sq ft x $0.71 = $6,010.86).

56. During this process, Metro did not make (nor has Metro ever made) an individualized determination of the public impact Mr. Pratt's development has on Metro's stormwater system and whether charging $6,010.86 for the total post-impervious surface area is proportional to any alleged impact.

57. Even if the development has an impact on Metro's stormwater system, the impact is limited to the 2,419 square feet of impervious area added to the property.

58. Mr. Pratt paid the stormwater capacity fee of $6,010.86 under protest.

59. Metro issued Mr. Pratt's Stormwater Availability Review permit (known as a "SWAVAIL" permit) on August 13, 2024, as SWAVAIL Permit # 2024071349.

60. On September 29, 2024, Mr. Pratt emailed Metro Water inquiring whether there was any appeal or exemption concerning the stormwater capacity fee for homeowners and requested an exemption from the fee for his project.

61. On September 30, 2024, an employee from Metro Water Development Services and Infill Development & Stormwater Permitting left a voicemail on Mr. Pratt's phone stating that there was no process to waive the stormwater capacity fee and that Metro could not waive the fee.

62. The residential project was not restricted to affordable housing so the Ordinance did not provide for waivers or variances to avoid paying the stormwater capacity fee.

63. Mr. Pratt's SWSF permit was issued on November 5, 2024, as SWSF Permit # 2024071346.

**Injury to Mr. Pratt**

64. Metro's stormwater capacity fee has caused harm to Mr. Pratt.

65. Mr. Pratt could not legally make additions to his home unless he obtained the necessary permit(s) from Metro.

66. Mr. Pratt could not legally acquire the necessary permit(s) until he satisfied the Ordinance and paid the stormwater capacity fee.

67. To satisfy the stormwater capacity fee requirement, Mr. Pratt had to pay $6,010.86 without Metro making any individualized assessment regarding the impact and costs of Mr. Pratt's development to Metro's stormwater system.

68. Even if Mr. Pratt's development impacts Metro's stormwater system and Metro had made an individualized assessment, any fee must be limited to the actual impact of his development.

11

Case 3:24-cv-01508    Document 1    Filed 12/30/24    Page 11 of 18 PageID #: 11

69. At the very least, Metro's charge of $0.71 per square foot for a stormwater capacity fee should have been limited to the 2,419 square feet of added impervious area. This would have resulted in a fee of $1,717.49, which was $4,293.37 less than the $6,010.86 Mr. Pratt was required to pay.

70. Mr. Pratt continues to be affected because Metro has not paid back the $6,010.86 he paid as a stormwater capacity fee.

71. By conditioning the grant of necessary permits required to construct Mr. Pratt's home expansion on Mr. Pratt agreeing to pay for improvements to Metro's infrastructure unrelated or excessive to the impact of his development, Metro has coerced Mr. Pratt to pay for Metro's property when he has no legal obligation to do so.

## LEGAL CLAIMS

## FIRST CLAIM OF RELIEF

### Unconstitutional Fifth Amendment Exaction (Metro's stormwater capacity fee)

72. Under the Takings Clause of the Fifth Amendment to the United States Constitution, no government may take private property for a public use without paying just compensation. U.S. Const. amend. V (Takings Clause); XIV (applying the Takings Clause to state and local governments).

73. Under the doctrine of unconstitutional conditions, the government cannot coerce individuals to give up their constitutional rights. *Koontz v. St. John's River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013). In the context of land use exactions, the Fifth Amendment's Takings Clause requires a "special application" of the unconstitutional conditions doctrine to protect an individual's right to just compensation when the government takes property in exchange for a land use permit. *Id.*

(citations omitted). This application of the unconstitutional conditions doctrine applies equally to monetary exactions i.e. demands of money in exchange for a permit. *Koontz*, 570 U.S. at 612.

74. The Takings Clause is "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). To ensure local governments do not abuse the land-use permitting process, a government demanding exactions "must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." *Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994). It is thus the government's burden to demonstrate that the exaction bears an "essential nexus" and "rough proportionality" to the public impacts of the proposed project. *Id.*; *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 837 (1987).

75. Metro's stormwater capacity fee demands that property owners pay a monetary fee to receive a building permit in order to develop their property.

76. The stormwater capacity fee requires individuals who develop their property to fund capital improvements to Metro's stormwater collection system and combined sewer system, which benefits the public as a whole, without regard to the social cost specifically attributable to the development on which the fee is imposed.

77. Metro has failed to make an individualized determination that the stormwater capacity fee bears an essential nexus or rough proportionality to the public impacts of each development subject to the fee.

78. Metro has also failed to demonstrate the impact, if any, that Mr. Pratt's development of adding an additional 2,419 square feet of impervious area to his property has on Metro's stormwater

13

Case 3:24-cv-01508    Document 1    Filed 12/30/24    Page 13 of 18    PageID #: 13

system. Likewise, Metro has failed to demonstrate that the fee of $6,010.86 charged to Mr. Pratt bears an essential nexus and is roughly proportional to the impact of his development on the stormwater system.

79. If Metro wants to improve its stormwater system for all Nashville residents, it may not single out and force residents, like Mr. Pratt, who are developing their property to shoulder all the costs.

80. Metro's stormwater capacity fee violates the unconstitutional conditions doctrine as applied under the Fifth and Fourteenth Amendments and is therefore unconstitutional.

## SECOND CLAIM FOR RELIEF

### Unconstitutional Fifth Amendment Exaction (the stormwater capacity fee's calculation of total post impervious surface area)

81. Plaintiff incorporates his prior allegations, including those pertaining to the unconstitutional exactions doctrine as stated above in his First Claim for Relief.

82. Metro's stormwater capacity fee demands that property owners pay a monetary fee in order to receive a building permit and develop their property.

83. Even assuming arguendo that a stormwater capacity fee for a development adding impervious area is permissible, charging the fee based on the total, rather than net, post-development impervious area is unrelated and disproportional to the impact of the actual development.

84. Pre-existing impervious area on a property does not create any new or additional social cost or public impact on Metro's stormwater system.

85. The stormwater capacity fee is also a disproportionate and excessive permit condition because it charges property owners not for the purported impact of a development's impervious area, but for pre-existing impervious area.

86. Requiring Mr. Pratt to pay $6,010.86 based on the total post-development impervious area of 8,466 square feet, rather than requiring a fee based on the development's net gain of 2,419 square feet impervious area ($1,717.49) is unrelated to any potential impact arising from the project. In short, charging a fee to include the 6,047 square feet of preexisting impervious area bears no nexus to a development that adds only 2,419 square feet to the impervious area.

87. Charging Mr. Pratt $6,010.86 based on the total post-development impervious area of 8,466 square feet, rather than charging a fee based on the development's net gain of 2,419 square feet to the impervious area ($1,717.49) is also disproportional to development's public impact.

88. Metro's additional charge of $4,293.37 based on the pre-existing impervious area of Mr. Pratts's original home, not the current development, is an unlawful exaction.

89. If Metro wants to improve its stormwater system for all residents, it may not single out and force residents, like Mr. Pratt, who are seeking to develop their property to shoulder all the costs.

90. The stormwater capacity fee's calculation based on the total, rather than net, post-development impervious area violates the unconstitutional conditions doctrine as applied under the Fifth and Fourteenth Amendments and is therefore unconstitutional.

## CLASS ACTION ALLEGATIONS

91. Plaintiff Peyton Pratt seeks to represent a class of all individuals who have paid Metro's stormwater capacity fee.

92. The number of individuals in this class makes the joinder of individual class members impracticable. Metro's website reflects that over 300 stormwater availability permits have been issued in 2024.[3]

93. There are questions of law common to the class, such as whether the stormwater capacity fee violates the unconstitutional conditions doctrine of the Fifth Amendment to the U.S. Constitution.

94. Mr. Pratt's claims are typical of those of other members of the class. Each of them has paid Metro's stormwater capacity fee and would benefit from just compensation in the amount that each class member paid to Metro.

95. Mr. Pratt adequately represents the class and has no interests antagonistic to the class.

96. A class action is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendant is acting and has acted on grounds generally applicable to the class, so that final injunctive and declaratory relief is appropriate respecting the class as a whole. Although this lawsuit seeks just compensation, such compensation is incidental to declaratory and injunctive relief that Plaintiff seeks.

97. In the alternative, a class action is appropriate under Federal Rule of Civil Procedure 23(b)(3). Metro consistently charges those seeking permits—such as Plaintiff and other class members—a stormwater capacity fee. Therefore, questions of law and fact common to the class predominate over any questions that affect only individual class members. A class action is thus superior to other available methods for fairly and efficiently adjudicating this case.

---

[3] https://epermits.nashville.gov/?#/search/c8fe76cafaed46ae962f25b609e12635?isAdvanced=1&searchType=permit&searchText=&page=1&searchCode=PRMT

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

1. Certify a class consisting of Mr. Pratt and all others who have paid a stormwater capacity fee.

2. Declare that Metro's stormwater capacity fee via Metro. Code § 15.64.035 violates the unconstitutional conditions doctrine under the Fifth and Fourteenth Amendments to the United States Constitution;

3. Declare that Metro's calculation of total, rather than net, post-impervious area via Metro. Code § 15.64.035 violates the unconstitutional conditions doctrine under the Fifth and Fourteenth Amendments to the United States Constitution;

4. Permanently enjoin Metro from further applying any unconstitutional conditions via Metro's stormwater capacity fee in Metro. Code § 15.64.035 both facially and as-applied to Plaintiff;

5. Award just compensation to Plaintiff and to the class members for the total amount charged pursuant to the stormwater capacity fee, including pre-and post-judgment interest to the fullest extent permitted under the law and in equity. In the alternative, award just compensation to Plaintiff and to the class members for the amount charged above the per-square-foot fee for net impervious surface area including pre-and post-judgment interest to the fullest extent permitted under the law and in equity.

6. Award nominal damages of $1;

7. Award attorneys' fees and costs in this action pursuant to 42 U.S.C. § 1988; and

8. Any other relief as the Court deems just and proper.

DATED: December 30, 2024

Respectfully submitted,

s/ Wencong Fa
Wencong Fa
B.P.R. No. 041768
wen@beacontn.org
BEACON CENTER OF TENNESSEE
1200 Clinton Street, #205
Nashville, TN 37203
Tel.: 615-383-6431

Ben Stormes
B.P.R. No. 041908
ben.stormes@beacontn.org
BEACON CENTER OF TENNESSEE
1200 Clinton Street #205
Nashville, TN 37203
Tel.: 615-383-6431

*Counsel for Plaintiff*