**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **PEYTON PRATT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:24-cv-01508** |
| **v.** | ) | **Judge Crenshaw** |
| | ) | **Magistrate Judge Frensley** |
| **THE METROPOLITAN GOVERNMENT** | ) | |
| **OF NASHVILLE AND DAVIDSON** | ) | |
| **COUNTY, TENNESSEE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT, CERTIFICATION OF RULE 23 SETTLEMENT
CLASS, NOTICE OF PROPOSED SETTLEMENT TO CLASS MEMBERS, AND TO
SET FINAL APPROVAL HEARING**</u>

Pursuant to Fed. R. Civ. P. 23(e)(1), Plaintiff Peyton Pratt and Defendant

Metropolitan Government of Nashville and Davidson County, Tennessee, ("Metro Nashville")

(together, the "Parties") jointly move the Court to (1) grant preliminary approval of their

proposed Class Action Settlement Agreement (the "Settlement" or "Settlement Agreement"),

(2) certify the Settlement Class (the "Settlement Class"), (3) approve the Parties' proposed

Notice of Settlement (the "Notice" or "Settlement Notice"), and (4) set a date for the Parties'

final approval hearing to determine fairness.

**I.      FACTS**

**A.      *The Ordinance***

Plaintiff Peyton Pratt filed a lawsuit on December 30, 2024, challenging Metropolitan

Ordinance BL2023-1690 (the "Ordinance") under the Fifth Amendment to the United States

Constitution. (Compl., Doc. No. 1.) The Ordinance established a stormwater capacity fee in

Davidson County for all "Post Development Impervious Surface Project Area exceeding eight

hundred square feet" to be paid prior to any development permit being issued. Metropolitan

Code of Laws § 15.64.035(B). The capacity fee applies to "properties in Davidson County that (1) receive storm water service fully or partly through a combined sewer system or (2) are infill lots located in previously developed parts of the MS4 area that receive storm water service fully or partly through another closed-pipe network maintained by the metropolitan government." *Id.* § 15.64.035(G). The term "Infill," otherwise referred to as "regulated residential" lots, means "the creation of eight hundred to fifteen thousand square feet of additional net impervious area . . . for a residential dwelling(s) through new development, redevelopment, or rehabilitation in existing neighborhoods." *Id.* § 15.64.010. "Impervious area" means "the portion of a parcel of property that is covered by any material, including without limitation roofs, streets, sidewalks and parking lots paved with asphalt, concrete, compacted sand, compacted gravel or clay, that substantially reduces or prevents the infiltration of storm water." *Id.* In other words, if a development would have more than 800 square feet of space where water could not penetrate, or would have difficulty penetrating, then a fee would be collected before any permit could be issued. *Id.* § 15.64.035. Defendant Metro Nashville collected the fee from January 1, 2024, to January 2025. (Resolution No. RS2025-1166, attached to Joint Motion as **Exhibit 1** (resolution approving the proposed settlement).)

### B. *Pratt's Residential Construction Project*

As of the time of filing, Pratt has resided in Davidson County with his family since 2016. (Compl. ¶ 43, Doc. No. 1.) In 2024, Pratt undertook a development project, which included adding 2,419 square feet of impervious area to his residential property. (*Id.* ¶¶ 47, 52.) Pratt's property already included 6,047 square feet of impervious area. (*Id.* ¶ 46.) Thus, the addition resulted in a total post-impervious area of 8,466 square feet. (*Id.* ¶¶ 46-47.)

Pratt's proposed project required him to obtain certain permits and pay certain fees. Pratt was required to obtain a Stormwater Single Family Infill Permit "(SWSF Permit)" because his development added more than 800 square feet of impervious area. *See* Metropolitan Code of Laws § 15.64.131 (covering Infill Development stormwater management requirements); Metro Nashville Stormwater Management Manual, Volume 1 – Regulations, at Chapter 8 Regulated Residential Infill (located at https://www.nashville.gov/sites/default/files/2021-08/SWMM-Vol1-Chapter_8_Final_2021.pdf?ct=1630070511, last visited May 22, 2025); Metro Water Services Infill Development Guide at 1-2 ("Infill projects also involve permits for additions made to existing homes that increase the impervious area by more than 800 square feet.") (located at https://www.nashville.gov/sites/default/files/2023-06/Infill_Development_Guide_6.16.23.pdf?ct=1687366209, last visited May 22, 2025). The filing fee for a SWSF permit application is $450. (Compl. ¶ 50 (citing Metro Water Services Development Fee Schedule, Ex. 1, available at https://training.nashville.gov/sites/default/files/2022-06/MWS-Development-Fee-Schedule-2022-a.pdf?ct=1656505757 (last visited May 22, 2025)).)[1] To obtain the SWSF permit, Pratt was required to submit a Request for Stormwater Availability Form and pay the stormwater capacity fee. (*Id.* ¶ 51.) The fee was 0.71 cents per square foot of the total post-impervious area of the property. (*Id.*) Given Pratt's addition resulted in a total post-impervious area of 8,466 square feet, pursuant to the Ordinance, Pratt was charged $6,010.86. (*Id.* ¶¶ 53, 55.) Pratt paid both amounts, through his contractor, under protest. (*Id.* ¶¶ 52-53, 58.) Metro Nashville issued Pratt a Stormwater Availability Review Permit. (*Id.* ¶ 59.)

---

[1] The Complaint also states there is a $45 technical fee upon filing, (Compl. ¶ 50); however, the cited fee schedule does not include a $45 technical fee. For purposes of this motion, Metro Nashville does not dispute the existence of a $45 technical fee.

### C.   Pratt's Individual and Class Action Claims

Pratt's lawsuit claims the storm water capacity fee and its calculation of total post-development impervious area constitute an unlawful exaction in violation of the Fifth Amendment to the United States Constitution. (Compl. ¶¶ 72-90, Doc. No. 1.) Pratt also seeks to represent and certify a class of all individuals who have paid Metro Nashville's stormwater capacity fee. (*Id.* ¶¶ 91-97.) During the roughly one-year period the stormwater capacity fee was enforced, Metro Nashville received payments from 361 individuals/entities. (*See* Stormwater Capacity Fee Payments, attached to Joint Motion as **Exhibit 2**.) Since all potential class members have paid the stormwater capacity fee, common legal questions arise on whether this fee or its calculation method is an unconstitutional exaction.

### D.   Terms of the Proposed Settlement Agreement

The Settlement Agreement is the result of arm's length negotiations between the Parties and should be found to be fair, reasonable, and adequate. (*See* Settlement Agreement, attached to Joint Motion as **Exhibit 3**.) Under the Settlement Agreement, Metro Nashville agrees to the payment of $1,450,250.09, which represents the total amount collected by Metro Nashville pursuant to the Ordinance, and $5,000 in attorneys' fees. (Settlement Agreement § 2.1.) The Settlement Agreement breaks down the total amount into three separate payment processes:

> (1) Metro Nashville will pay Pratt $6,010.86 as reimbursement for the stormwater capacity fees paid pursuant to the Ordinance. (*Id.* § 2.2.1.)
>
> (2) Metro Nashville will pay the Beacon Center of Tennessee $5,000.00, representing attorneys' fees and costs. (*Id.* § 2.2.2.)

(3) Metro Nashville will establish a claims process for all remaining individuals/entities that paid stormwater capacity fees to seek reimbursement of said fees. (*Id.* § 2.2.3.)

Metro Nashville also agrees to cease collecting stormwater capacity fees. (*Id.* § 2.2.4.) In exchange, Pratt and the Settlement Class agree to resolve, fully, finally, and with prejudice, the claims of the Rule 23 class against Metro Nashville. (*Id.* § 2.3.1.) Pratt and the Settlement Class also agree to not seek interest regarding the amounts paid in stormwater fees. (*Id.* § 2.3.2.) The Settlement Class also agrees to indemnify and hold harmless Metro Nashville for any and all claims, demands, actions, causes of action, and lawsuits resulting in a judgment against Metro Nashville by a third party. The indemnification is limited to (1) claims arising from a payment to a Class Member under the Settlement Agreement and (2) the amount of the Class Member's settlement payment. (*Id.* § 2.3.3.)

The Settlement Class consists of all individuals/entities who paid the stormwater capacity fee pursuant to the Ordinance. The Parties agree to a claims process through which Settlement Class members will be noticed and presented with the opportunity to be reimbursed their fee. (*Id.* § 5.2.) The proposed claims process includes, (1) a letter sent to each individual / entity explaining this agreement and listing the total amount of the settlement subject to reimbursement, which will not include interest, and (2) a claim form to be completed by the individual / entity for reimbursement. (*Id.*) Payments will be made to class members who submit a timely Claim Form. (Proposed Claim Form attached to Joint Motion as **Exhibit 4**.)

Following the Court's preliminary approval of the Settlement Agreement, the Parties will notify the Settlement Class members of their rights by mailing the Claim Form to their last known address. (Proposed Notice attached to Joint Motion as **Exhibit 5**.)

## II. THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS, APPROVE THE PROPOSED SETTLEMENT AGREEMENT AND NOTICE, AND SET A FINAL APPROVAL HEARING

Public policy strongly favors settlement for resolving legal disputes, particularly in class actions. *See, e.g.*, *Franks v. Kroger Co.*, 649 F.2d 1216 (6th Cir. 1981), *vacated on other grounds and modified*, 670 F.2d 71 (6th Cir. 1982); *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 533 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("Lastly, the Court notes that there is a federal policy favoring settlement of class actions. The Court can find no principled basis for not adhering to that policy in this matter . . . [given the] conservation of . . . judicial resources [which was] substantial.").

For class claims, Federal Rule of Civil Procedure 23(e)(1) requires judicial review and approval of any proposed settlement before it may take effect. This includes a determination that the case is appropriate for class treatment for purposes of settlement. "There are three steps which must be taken by the court in order to approve a settlement: (1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 903 (S.D. Ohio 2001) (citations omitted). "The question at the preliminary-approval stage is 'simply whether the settlement is fair enough' to begin the class-notice process." *Thomsen v. Morley Companies, Inc.*, 639 F. Supp. 3d 758, 764 (E.D. Mich. 2022) (quoting *Garner Props. & Mgmt. v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020)). "'The court must direct notice' of a proposed settlement 'to all class members who would be bound' by it if 'the court will likely be able to approve the proposal under Rule 23(e)(2)[ ] and certify the class for purposes of judgment on the proposal.'" *Id.* (quoting Fed. R. Civ. P. 23(e)(1)(B)).

Accordingly, the Parties jointly request that the Court take the initial steps in the settlement approval process by preliminarily certifying the Settlement Class for settlement purposes, appointing class counsel and the class representative, granting preliminary approval of the Settlement Agreement and the proposed Notice, and scheduling a final approval hearing. At the final approval stage, the Court will review more comprehensive documentation and make a final determination as to whether the Settlement Agreement is fair, reasonable, and adequate under Rule 23(e)(2).

## A. The Court Should Preliminarily Certify the Class, Approve the Class Representative, and Appoint Class Counsel for Settlement Purposes

Prior to approving a settlement that includes a class component, the Court must preliminarily certify the class, appoint class counsel, and approve the class representative. *Davis v. Omnicare, Inc.*, No. 5:18-CV-142-REW, 2021 WL 1214501, at *4 (E.D. Ky. Mar. 30, 2021); *see also Garner*, 333 F.R.D. at 621–22; *In re Flint Water Cases*, 499 F. Supp. 3d 399, 418 (E.D. Mich. 2021). The Parties jointly submit a proposed class definition, agree to Pratt as class representative, and agree to Pratt's counsel as class counsel.

### 1. Class Definition

"Preliminary certification of a class requires the proposed class's definition to be 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.'" *Davis*, 2021 WL 1214501, at *4 (quoting *Ware v. CKF Enterprises, Inc.*, No. 5:19-CV-183-DCR, 2020 WL 2441415, at *10 (E.D. Ky. May 12, 2020)). The Parties propose to define the Settlement Class as: all property owners who paid the stormwater capacity fee under Metro Code of Laws § 15.64.035 from January 1, 2024, to January 5, 2025. It will be administratively feasible to determine the members of the Settlement Class. The inquiry is an objective one, as records of those who submitted a Request for Stormwater Availability Form and paid the stormwater capacity fee

are public record, readily available, and require no further merits-based determination for purposes of settlement. (*See* Stormwater Capacity Fee Payments, attached to Joint Motion as **Exhibit 2**.) Courts have granted preliminary certification for similarly feasible proposed classes. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (affirming district court's decision on class definition of persons "who were charged local government taxes on their payment of premiums which were either not owed, or were at rates higher than permitted"); *Davis*, 2021 WL 1214501, at *4 (granting conditional certification for settlement purposes where existing employment records were used to identify the majority of class members); *Kinder v. Nw. Bank*, 278 F.R.D. 176, 183 (W.D. Mich. 2011) (finding whether plaintiffs used one of the defendant's ATMs at one of the specified locations during the relevant time period and whether they were charged a fee to be sufficiently definite and objective). Thus, the Parties' proposed definition of the Settlement Class is appropriate, and the Court should proceed to the question of preliminary certification.

### 2. Preliminary Certification of the Settlement Class Under Fed. R. Civ. P. 23

The Court should grant preliminary certification of the Settlement Class under Fed. R. Civ. P. 23(a) and (b)(3). In order for a class to be certified, requirements set forth in Fed. R. Civ. P. 23(a) and (b) must be met. Fed. R. Civ. P. 23(a) states:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

These four factors are referred to as numerosity, commonality, typicality, and adequacy of representation, respectively. *See Thomsen*, 639 F. Supp. 3d at 765. Here, all four factors support preliminary certification of the Settlement Class.

First, the Settlement Class satisfies the numerosity requirement because it is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There are "no strict numerical test[s] for determining impracticability of joinder." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). The Settlement Class is defined as all property owners who paid the stormwater capacity fee, which was levied against those who applied for a stormwater availability permit. During the relevant time period, Metro Nashville received payments from 361 individuals/entities under the Ordinance. (*See* Stormwater Capacity Fee Payments, attached to Joint Motion as **Exhibit 2**; *see also* Compl. ¶ 92, Doc. No. 1.) While there is no magic number to satisfy the numerosity requirement, courts in his Circuit have found numbers such as these to satisfy the numerosity requirement at this stage. *See Garner*, 333 F.R.D. at 622 ("[A] class of 40 or more members is sufficient to satisfy the numerosity requirement."); *Davidson v. Henkel*, 302 F.R.D. 427, 436 (E.D. Mich. 2014) (numerosity is satisfied with a putative class of at least "between 21 and 40" members).

Second, the Settlement Class satisfies the commonality requirement because it shares common questions of law or fact. Fed. R. Civ. P. 23(a)(2). "Commonality requires 'a common contention' that, if resolved, would resolve claims of all class members 'in one stroke.'" *Thomsen*, 639 F. Supp. 3d at 765 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "A common question of law or fact exists if all the Class's members suffered the same injury." *Id.* Pratt alleges he and the Settlement Class suffered the same injury, which is that they were required to pay the stormwater capacity fee based on the total post-development impervious area in order to obtain a building permit. While the legal analysis could vary per

class member, this does not prevent the Court from finding that commonality exists, as all 300-plus Settlement Class members paid the stormwater capacity fee, and, ultimately, the legal issues would be nearly identical. *See Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 533–34 (E.D. Mich. 2015) (finding commonality is satisfied if "the litigation is driven by issues that are common to the entire putative class").

Third, the claims satisfy the typicality requirement because Pratt's claims or defenses are typical of the Settlement Class's claims or defenses. Fed. R. Civ. P. 23(a)(3). "Typicality is satisfied if the representative's claim 'arises from the same [transaction or occurrence as] the claims of other class members, and [they] are based on the same legal theory.'" *Thomsen*, 639 F. Supp. 3d at 765 (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)). Pratt's claims and the Settlement Class's claims arise from the application of the same stormwater capacity fee. If the Court finds the stormwater capacity fee violated Plaintiff's Fifth Amendment rights, then it would result in the same finding as to anyone else who paid the same fee. Thus, the typicality requirement is satisfied.

Finally, "the representative parties [must] fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). "Because a class representative carries significant power in resolving the claims of fellow class members, a court should ensure that a proposed representative will adequately represent that class." *Davis*, 2021 WL 1214501, at *7 (citing *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013)). "There are two criteria for determining whether the representation of the class will be adequate: 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524–25 (6th Cir. 1976). The proposed Settlement Class includes all property owners who paid the stormwater capacity fee pursuant to the Ordinance, and Pratt paid the stormwater capacity fee pursuant to the

Ordinance. (Compl. ¶¶ 58, 94, Doc. No. 1.) It is apparent that Pratt has common interests with the Settlement Class in seeking reimbursement of the stormwater capacity fee, and there are no apparent interests antagonistic to the Settlement Class.

It is likewise apparent that Pratt will prosecute the interests of the class through qualified counsel. In order to meet the "vigorous prosecution" requirement, "Plaintiff must have sufficient financial and personal involvement to encourage it to prosecute the action vigorously, and adequate resources and legal representation to meet the demands of maintaining the action." *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 450 (S.D. Ohio 2009). The Parties jointly submit that Pratt meets the vigorous prosecution requirement. Plaintiff has resided in Davidson County for nearly ten years. (Compl. ¶ 8.) In his Complaint, Pratt states his intent to remain on his property in Davidson County, turning it into his family's "forever home" with its recent additions to accommodate their family's size. (*Id.*) The Complaint further lays out Pratt's effort to oppose the stormwater capacity fee's application to his construction project, further evidencing his ability and desire to prosecute the issue. (*Id.* ¶¶ 58-61.) For these reasons, the Court should find Pratt has satisfied the requirements to serve as the Settlement Class representative.

As the Parties have satisfied Fed. R. Civ. P. 23(a)'s requirements, the inquiry shifts to the requirements of Fed. R. Civ. P. 23(b). Pratt's Complaint alleges a class action is appropriate under Rule 23(b)(2) (injunctive or declaratory relief) and/or (b)(3). The Parties submit that the most proper avenue for preliminary certification for purposes of preliminary settlement approval lies in Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) permits class actions if (1) the common questions of law and fact predominate over any questions affecting only individuals and (2) the class-action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy.

"Predominance is satisfied if the Class's individual questions of law or fact 'are sufficiently cohesive to warrant adjudication by representation.'" *Thomsen*, 639 F. Supp. 3d at 766 (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997)). Such cohesion exists here, where the injury of the Settlement Class stems from an alleged uniform course of conduct, which is Metro Nashville's calculation and application of the stormwater capacity fee. Thus, the first inquiry is answered in the affirmative and warrants preliminary certification. *See Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("Cases alleging a single course of wrongful conduct are particularly well-suited to class certification.").

"Superiority 'is met if the class action is a better way than individual litigation to adjudicate a claim.'" *Thomsen*, 639 F. Supp. 3d at 766 (quoting *Calloway v. Caraco Pharm. Lab'ys*, 287 F.R.D. 402, 407 (E.D. Mich. 2012)). Given Pratt's claims center on complex constitutional law issues, a class action would be superior to asking over 300 individuals to seek their own counsel and pursue their own claims in these specialized areas of law. Moreover, given that the 300-plus Settlement Class members suffered the same injury (albeit perhaps different damages), class adjudication would serve the interests of the Settlement Class and efficiency. *Id.* (superiority met where class members suffered the same injury).

For these reasons, the Parties have satisfied the requirements of Fed. R. Civ. P. 23(a) and (b), and Preliminary Certification of the Settlement Class is warranted.

### 3. Preliminary Approval of Class Representative

For the reasons set forth above in Section II.A.2., the Court should approve Pratt as the class representative for settlement purposes.

### 4. Preliminary Appointment of Class Counsel

Finally, the Court should preliminarily appoint Pratt's current counsel, Wencong Fa and Ben Stormes of the Beacon Center of Tennessee, as counsel for the Settlement Class.

When appointing class counsel, a court considers:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class.

*Davis*, 2021 WL 1214501, at *7 (citing Fed. R. Civ. P. 23(g)(1)(A)). "The most important concern is ensuring that counsel will fulfill its duty to 'fairly and adequately represent the interests of the class.'" *Id.* (citing Fed. R. Civ. P. 23(g)(4)).

The Court should grant preliminary appointment of the Beacon Center of Tennessee's representation of Pratt. As outlined in the accompanying declarations, Beacon attorneys engaged in extensive research before filing this lawsuit. (*See* Declaration of Wencong Fa ("Fa Decl.") ¶ 4; Declaration of Ben F. Stormes III ("Stormes Decl.") ¶ 4 (attached as collective **Exhibit 6**).) That research consists of reviewing public records, reviewing documents in the plaintiff's possession, communicating with the plaintiff regarding facts relevant to this lawsuit, and extensive legal research. (*See id.*) Beacon has long litigated property rights cases, including a recent case involving similar issues as the issues in this case. (*See* Fa Decl. ¶ 2; Stormes Decl. ¶ 2 (citing *Knight v. Metro. Gov't of Nashville & Davidson Cnty.*, 67 F.4th 816 (6th Cir. 2023)).) Beacon's attorneys have themselves litigated many property rights cases across the country, including cases involving extensive jury trials, (Stormes Decl. ¶ 3), and a precedent-setting case at the Supreme Court of the United States, (Fa Decl. ¶ 3 (citing *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021))). Beacon's attorneys diligently worked with counsel for Metro Nashville to negotiate an agreement that provides favorable terms to all parties—including Class Members. Counsel for the parties engaged in arms-length

negotiations and debated the language of various provisions of both the settlement agreement and the notice form through multiple rounds of revisions and emails before reaching the agreement that the parties are presenting to the Court. (Fa Decl. ¶ 5).

Thus, the Parties have demonstrated that Pratt's counsel will adequately and fairly represent the Settlement Class's interests. *See Davis*, 2021 WL 1214501, at *7 (granting preliminary appointment when counsel demonstrated involvement and commitment to case and knowledge and expertise); *Ware*, 2020 WL 2441415, at *10 (same).

### B.      *The Proposed Settlement Agreement Warrants Preliminary Approval*

With the Settlement Class defined and preliminarily certified, and its representative and counsel preliminarily appointed, the remaining issue before the Court is whether the proposed $1.4 million-plus settlement is within the range of what might be considered fair, reasonable, and adequate, so that notice of the proposed Settlement should be given to the Settlement Class and a hearing scheduled to consider final settlement approval. *Miracle v. Bullitt Cty., Ky.*, No. CIV.A. 05-130-C, 2008 WL 3850477, at *5 (W.D. Ky. Aug. 15, 2008); *see also Manual for Complex Litigation* § 13.14, at 173 (4th ed. 2004) ("First, the [court] reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing."). The Settlement Agreement should be preliminarily approved if it "'(1) does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys, and (2) appears to fall within the range of possible approval' at the final-approval stage." *Thomsen*, 639 F. Supp. 3d at 767 (quoting *Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, at *11 (E.D. Mich. Aug. 2, 2010) (internal quotations omitted)). Indeed, absent any obvious deficiencies, the Court should preliminarily approve the Settlement Agreement,

and direct that notice of a final approval hearing under Rule 23(e) be given to Settlement Class Members. *Miracle*, 2008 WL 3850477, at *5.

### 1.    Fed. R. Civ. P. 23(e) Standards Are Met

The proposed Settlement Agreement meets the standard for preliminary approval because it is a fair, reasonable, and adequate resolution of the Settlement Class claims. Under Fed. R. Civ. P. 23(e), courts are to consider four factors in determining whether a settlement is fair, reasonable, and adequate: "(1) whether the class representatives and class counsel have adequately represented the class; (2) whether the proposal was negotiated at arm's length; (3) whether the relief provided for the class is adequate; and (4) whether the proposal treats class members equitably relative to each other." All four factors are satisfied here and warrant preliminary approval.

First, as stated in Sections II.A.2. and II.A.4., *supra*, Class Counsel and Pratt adequately represent the Settlement Class. (*See* Stormes Decl.; Fa Decl.)

Second, the terms of the Settlement Agreement are the product of arm's-length negotiations between the Parties and their counsel, which agree a resolution is in the best interest of both Parties. (*See* Stormes Decl. ¶ 6; Fa Decl. ¶ 6.) It is well established that significant weight should be attributed to the opinion of experienced counsel that a settlement is in the best interests of the class. *See Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) (stating that court should defer to the judgment of experienced counsel who has evaluated the strength of plaintiff's case); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001) ("The Court should always give significant weight to the belief of experienced Counsel that the settlement is in the best interest of the class.") (citation omitted). "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *In re AME Church Emp. Ret. Fund Litig.*, No. 1:22-MD-

03035-STA-JAY, 2025 WL 900003, at *5 (W.D. Tenn. Mar. 24, 2025) (citing *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008)).

Third, the relief provided by the Settlement Agreement is adequate. Under Fed. R. Civ. P. 23(e)(2)(C), whether relief is considered adequate depends upon: "(1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (3) the terms of any proposed attorney's fee, including timing of payment; and (4) any agreement required to be identified under Rule 23(e)(2)."

Class Counsel have carefully weighed the costs, risks, and delay of trial and appeal, based on their familiarity with and detailed knowledge of the facts of this case. Given the complexity of takings law and land use exactions, they acknowledge that a positive end-result is not assured if this litigation continues. (Stormes Decl. ¶ 6; Fa Decl. ¶¶ 5, 6 ); *see also In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 373-74 (S.D. Ohio 2006) (explaining "the difficulty Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process, provide justifications for this Court's approval of the proposed Settlement"). Moreover, taking into account the likelihood of appeal, litigating these claims through to final enforceable judgment will probably take several more years, requiring Settlement Class members who suffered losses in 2024 to wait at least five more years for any final resolution of their claims. *See In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 837 (W.D. Pa. 1995) ("It is safe to say, in a case of this complexity, the end of that road might be miles and years away."); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").

The remainder of the adequacy factors are readily met. The Parties have agreed to an effective means of distributing relief to Settlement Class members through a claims process, which includes, (1) a letter sent to each individual / entity explaining this agreement and listing the total amount of the settlement subject to reimbursement, which will not include interest, and (2) a reimbursement form to be completed by the individual / entity. (Settlement Agreement § 5.2, attached to Joint Motion as **Exhibit 3**.) Payments will be made to class members who submit a timely Claim Form. (*Id.*); *Fitzgerald v. P.L. Mktg., Inc.*, No. 217CV02251SHMCGC, 2020 WL 7764969, at *12 (W.D. Tenn. Feb. 13, 2020) (finding proposed distribution method effective where proposed notice and payment procedures were simple and direct).

Moreover, the $5,000 attorneys' fees are adequate and do not detract from the amount of the Settlement Class's relief as it is an amount separate and apart from the reimbursement of stormwater capacity fees. *See Garner*, No. 17-CV-13960, 2020 WL 4726938, at *10 (E.D. Mich. Aug. 14, 2020) (finding that 33% attorney's fees were reasonable); *In re AME Church*, 2025 WL 900003, at *6 (approving a 33% attorney's fee award). On its face the Settlement Agreement also treats the Settlement Class equally. While Pratt will not have to fill out a claim form, he and the remaining Settlement Class members are all entitled to the same relief: a full refund of the stormwater capacity fee without interest. All these factors weigh in favor of a preliminary determination of adequacy.

### 2. *UAW* Factors Are Met

The Sixth Circuit considers factors additional to those outlined by Rule 23(e) to determine whether a proposed class settlement is fair, reasonable, and adequate:

(1) the risk of fraud or collusion;
(2) the complexity, expense, and likely duration of the litigation;
(3) the amount of discovery engaged in by the parties;
(4) the likelihood of success on the merits;
(5) the opinions of class counsel and class representatives;

(6) the reaction of absent class members; and
(7) the public interest.

*Thomsen*, 639 F. Supp. 3d at 769 (citing *Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*")). The *UAW* factors weigh in favor of preliminary approval of the Parties' proposed Settlement Agreement.

First, no fraud or collusion exists. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Id.* (quoting *Leonhardt*, 581 F. Supp. 2d at 838). As there is no evidence to the contrary, the first factor is satisfied.

Second, as already noted above, Class Counsel acknowledges the complexity, expense, and likely duration of the litigation should the Settlement Agreement not be approved. (Stormes Decl. ¶ 6; Fa Decl. ¶¶ 5, 6.) Thus, this factor is also satisfied. *Thomsen*, 639 F. Supp. 3d at 769 (finding the complexity element satisfied where the plaintiffs acknowledged that continued litigation would be complex, costly, and likely continue for several years with no guarantee of relief).

Third, while the case is at its early stages and the Parties have yet to engage in formal discovery, this does not weigh against preliminary approval, as Class Counsel engaged in extensive informal discovery and investigation in pursuit of Pratt's claims. (Stormes Decl. ¶ 4; Fa Decl. ¶ 4.) Moreover, in a case against a governmental entity, most of the information that would be obtained in formal discovery is publicly available and readily attainable, such as the amount of stormwater availability permits issued and the amount of stormwater capacity fees levied. Thus, this factor still weighs in favor of preliminary approval. *See Thomsen*, 639 F. Supp. 3d at 770 (noting that, "Although the parties did not conduct formal discovery, they have conducted ample informal discovery . . . "); *see also Does 1-2 v. Déjà Vu*

*Servs., Inc.*, 925 F.3d 886, 898-99 (6th Cir. 2019) (concluding that the district court did not abuse its discretion when finding that informal discovery was sufficient for approval).

Fourth, the likelihood of ultimate success on the merits balanced against the amount and form of relief offered in this Settlement weighs in favor of reasonableness. This factor "provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek*, 636 F.3d at 245; *Bowen v. Paxton Media Grp., LLC*, No. 5:21-CV-00143-GNS, 2024 WL 1446468, at *10 (W.D. Ky. Apr. 3, 2024) (same). While Pratt obviously believes in the strength and viability of the class claims asserted in this litigation, Pratt and Class Counsel also acknowledge the risk, expense, and delay involved in continuing to litigate against Metro Nashville. As the court in *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005), recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." Likewise, Metro Nashville's proposed $1.4 million-plus settlement indicates that it acknowledges that Pratt could also succeed on the merits. "In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *Bowen*, 2024 WL 1446468, at *10 (internal quotations omitted). Here, Pratt and his attorneys support the preliminary approval of the proposed Settlement Agreement. (Stormes Decl. ¶ 6; Fa Decl. ¶¶ 5, 6.) Thus, this factor supports approval.[2]

---

[2] The absence of interest in the proposed settlement does not undermine its fairness. Courts in the Sixth Circuit routinely approve class action settlements that reimburse principal amounts without awarding pre- or post-judgment interest. *See, e.g.*, *Fitzgerald*, 2020 WL 7764969, at *12 (granting final approval where class members recovered fixed settlement amounts without interest); *In re Broadwing*, 252 F.R.D. at 374-75 (approving ERISA settlement providing compensation based on principal losses without separate interest award). In determining whether a settlement is fair, reasonable, and adequate, courts apply

Fifth, Class Counsel and Pratt support settlement. (Stormes Decl. ¶ 6; Fa Decl. ¶¶ 5, 6.) Thus, this factor favors approval.

Sixth, the reaction of absent class members cannot be evaluated at the preliminary approval stage. Thus, this factor is "neutral" to the analysis. *Thomsen*, 639 F. Supp. 3d at 770 (citing *Green v. Platinum Rests. Mid-Am. LLC*, No. 3:14-CV-439, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022) (finding that a court cannot evaluate this factor before notice)).

Finally, public interest weighs in favor of preliminary approval. As noted above, public policy strongly favors settlement for resolving legal disputes, particularly in class actions. *See, e.g.*, *Franks*, 649 F.2d 1216, *vacated on other grounds and modified*, 670 F.2d 71; *Thacker*, 695 F. Supp. 2d at 533, *aff'd sub nom. Poplar Creek*, 636 F.3d 235. Settling this class action would serve public interest by making the Settlement Class whole at this early stage of litigation, rather than waiting until more protracted litigation and incurring the risk of no recovery at all. Thus, this factor weighs in favor of preliminary approval.

Because Rule 23(e) and the *UAW* factors weigh in favor of preliminary approval, the Court should grant the same and proceed to approval of the Parties' proposed Notice.

## C.     *The Proposed Notice is Appropriate*

Rule 23(e) governs notice requirements for settlements or "compromises" in class actions and provides that a class action shall not be dismissed or compromised without both the approval of the Court and notice of the proposed dismissal or compromise to all members of the class in such manner as the Court directs. Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal."). The contents of a Rule 23(b)(3) notice "must be 'the best notice practicable' and include 'individual notice to all members who can be identified through reasonable effort.'"

---

the factors outlined in *UAW*, none of which require the payment of interest.

*Thomsen*, 639 F. Supp. 3d at 771 (quoting Fed. R. Civ. P. 23(c)(2)(B)). Notice must also include the following in "plain, easily understood language":

(1) The nature of the action;
(2) The definition of the class certified;
(3) The class claims, issues, or defenses;
(4) That a class member may enter an appearance through an attorney if the member so desires;
(5) That the court will exclude from the class any member who requests exclusion;
(6) The time and manner for requesting exclusion; and
(7) The binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* Federal courts have generally held that an individual mailing to each class member's last known address is "reasonably calculated to reach interested parties" and is a sufficient form of notice. *See, e.g.*, *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 285 (6th Cir. 2005).

Here, the proposed Notice, attached to the Parties' Joint Motion as **Exhibit 5**, will be individually mailed to the Settlement Class Members to their last address known to Metro Nashville, which is the address used to apply for a Stormwater Availability Permit. That Notice will fully apprise the Settlement Class Members of the terms of the Settlement Agreement and of their options to participate in, object to, and be excluded from the Settlement. The mailing will also include paperwork that Class Members will have to sign and return to participate in the Settlement. Accordingly, the detailed information in the proposed Notice is more than adequate to put Settlement Class Members on notice of the proposed Settlement and is well within the requirements of Rule 23.

### D. The Parties Request a Final Approval Hearing

In connection with preliminary approval of the Settlement Agreement, the Court must set a final approval hearing date, dates for mailing the Notice, and deadlines for objecting to the Settlement, opting out of the Class, and filing papers in support of the Settlement. The Parties propose the following:

| | |
|---|---|
| Notice and Claim Forms mailed to the Class (the "Notice Date") | 28 calendar days after the Preliminary Approval Order is entered (the list shall be provided to the Administrator by Defendant within 14 days of the entry of the Order) |
| Deadline for filing Claim Form | 14 calendar days following the Final Approval Hearing, or by a later date to be set by Class Counsel and communicated to the Administrator |
| Deadline to file motion seeking final approval of the Rule 23 Settlement Agreement | 7 calendar days prior to the Final Approval Hearing |
| Deadlines for mailing objections to Administrator and for Class Counsel to file objections with the Court | Objections must be mailed to the Administrator and postmarked 21 calendar days prior to the Final Approval Hearing, and Class Counsel must file such objections no later than 7 calendar days prior to the Final Approval Hearing |
| Deadline for Class Members to exclude themselves from the Rule 23 Settlement | Requests to be excluded from the Rule 23 Settlement must be mailed to the Administrator and postmarked 21 calendar days before the Final Approval Hearing, and Class Counsel must file such exclusion requests no later than 10 calendar days before the Final Approval Hearing |

| Final Approval Hearing | At the Court's convenience, at least 90 calendar days after the entry of the Notice Order |
|---|---|

## III.    CONCLUSION

The proposed Settlement Agreement is the product of arm's-length negotiations between experienced counsel. It provides full and fair relief to the Settlement Class, is procedurally sound, and satisfies all requirements under Rule 23 and governing Sixth Circuit precedent.

Accordingly, the Parties respectfully request that the Court grant preliminary approval of the Settlement and preliminary certification of the Settlement Class, appoint Class Counsel and the Class Representative, approve the proposed Notice, and set a Final Approval Hearing to complete the settlement process.

Respectfully submitted,

DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY

WALLACE W. DIETZ (#9949)
DIRECTOR OF LAW

/s/ *Michael R. Dohn*
MELISSA ROBERGE (#26230)
    SENIOR COUNSEL
MICHAEL R. DOHN (#37535)
    ASSISTANT METROPOLITAN ATTORNEY
METROPOLITAN COURTHOUSE, SUITE 108
P.O. BOX 196300
NASHVILLE, TENNESSEE 37219
(615) 862-6341
melissa.roberge@nashville.gov
michael.dohn@nashville.gov
*Counsel for Metro Nashville*

/s/ *Wencong Fa*
WENCONG FA (#041768)
BEN STORMES (#041908)
Beacon Center of Tennessee
1200 Clinton Street, Suite 205
Nashville, TN 37203
(615) 383-6431
wen@beacontn.org
ben.stormes@beacontn.org
*Counsel for Peyton Pratt and Putative Class*